UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **ERIN BEGLEY**<br>**BLAKE LEE**<br><br>        Plaintiffs;<br><br>   v.<br><br>**MATTHEW GOLDEN, LODA BIER GARTEN, INC., EMPLOYEE LIABILITY MANAGEMENT, INC., EXECUTIVE PARK SERVICES, INC., POINCIANA HOLDINGS, LLC.**<br><br>     Defendant. | Case No._____19-56_____ |

## <u>Complaint under the Fair Labor Standards Act</u>

Plaintiffs Erin Begley ("Begley") and Blake Lee ("Lee") (collectively "Plaintiffs"), by and through their counsel of record bring this lawsuit against Defendant Loda bier Garten Inc. ("Loda");  Defendant Poinciana Holdings, LLC ("Poinciana"); Defendant Employment Liability Management, Co. ("ELM"); Executive Park Services, Inc. ("EPS") and Defendant Matthew Golden ("Golden") (collectively "Defendants") for violations under the Fair Labor Standards Act ("FLSA" or "Act"), 29 U.S.C.S. §201-219.

Defendants employed Plaintiffs as servers at Loda bier Garten bar and restaurant in Mobile, Alabama.  Defendants classified Plaintiffs as non-exempt hourly employees. Furthermore, Defendants claimed a tip-credit of $5.12 per hour for Plaintiffs.

Defendants illegal pay practices resulted in the theft of Plaintiffs' wages. Defendants claimed an unlawful tip credit, failed to pay any wages for compensable time, and illegally required Plaintiffs to pay for uniforms, tools of the trade, and other business expenses. These pay practices caused Plaintiffs compensation below the required federal minimum wage and overtime compensation rates.

Plaintiffs engaged in protected activity by opposing Defendants claiming a tip credit for performing non-tip producing duties in discrete periods of the work day when it exceeded twenty percent (20%) of their worktime in violation of the Act.  29 U.S.C.S. §§ 206, 203(m). Defendants terminated Plaintiffs for opposing Defendants' tip credit practices in violation the Act's anti-retaliation provision. 29 U.S.C.S. §215(a)(3).

## I.    Parties, Jurisdiction, and Venue

1.  Defendant Poinciana, LLC is a limited liability company registered in the state of Alabama. (**Exhibit 1**: Secretary of State registration).

2.  Defendant Loda bier Garten Inc. is a corporation registered in the state of Alabama. (**Exhibit 2:** Secretary of State registration).

3.  Defendant Poinciana is the trademark owner of Loda bier Garten. (**Exhibit 3: Trademark Webpage).**

4.  Defendant Executive Park Services, Inc.  is a corporation registered in the state of Alabama. (**Exhibit 4:** Secretary of State registration).

5.  EPS is a professional employer organization ("PEO") registered with the Alabama Department of Labor. (**Exhibit 5:** Alabama Department of Labor Screen Shot).

6.  Defendant Employee Liability Management Inc. is a corporation registered in the state of Alabama and is an alternative name for EPS. (**Exhibit 6:** Secretary of State registration).

7. ELM's filing with the state of Alabama Secretary of State describes the nature of its business as "Employee Leasing." (**Exhibit 6:** Secretary of State registration).

8. Defendant ELM is listed as a member of Defendant EPS. (**Exhibit 4:** Secretary of State EPS registration).

9. Defendant Matthew Golden ("Defendant Golden"), is an individual and resident of Mobile, Alabama.

10. Matthew Golden is listed as an organizer of Defendant Poinciana as well as the registered agent, incorporator, and director of Defendant Loda.

11. Matthew Golden is an employer under the Act and subject to individual liability due to his significant ownership in the corporations, personal responsibility in making decisions related to pay, job assignments, terminations, and control of other conditions of employment.

12. Plaintiffs were issued a handbook under the Plaintiffs Poinciana Holdings, LLC and Loda bier Garten Inc. names. (**Exhibit 7**: Handbook).

13. The handbook states Defendant Loda hired Defendant ELM for payroll and payroll related services. (**Exhibit 7**: Handbook).

14. Plaintiff Begley's paychecks were issues by Poinciana Holdings, LLC. (**Exhibit 8**: Begley's Redacted Paychecks).

15. Defendant operates a restaurant located at 251 Dauphin Street in Mobile, Alabama. (**Exhibit 9**: Website Homepage).

16. Defendant Loda is a business engaged in commerce as defined by the Act. 29 U.S.C. §203(b).

17. Defendant Golden is the founder, owner, operator Defendant Loda and Defendant ELM.

3

18. Defendants are an enterprise engaged in commerce business as defined by the Act. 29 U.S.C. §203(s).

19. Defendants are enterprise with five-hundred thousand dollars ($500,000.00) in annual gross revenue.

20. Plaintiff Begley is a resident of Mobile County Alabama.

21. Plaintiff Lee is a resident of Mobile County Alabama.

22. At all material times Defendant Loda was Plaintiffs employer as defined by the Act. 29 U.S.C. §203(d).

23. Plaintiff Begley was employed as a server by Defendant Loda between July 2017 and September 2018.

24. Plaintiff Lee was employed as a server by Defendant Loda between August 2018 and September 2018.

25. At all material times Plaintiffs were employees of Defendant Loda as defined by the Act. 29 U.S.C. §203(d).

26. Defendant Loda employed Plaintiffs as employees that engaged in interstate commerce when completing credit card transactions and serving patrons traveling through the state of Alabama.

27. This action is brought pursuant to 29 U.S.C.S §216(b), as amended in 1977, providing for a private cause of action under the Act's minimum wage and overtime provisions, 29 U.S.C.S. §206 and §207of the Act.

28. Plaintiffs seek the amount of their unpaid minimum wages, unpaid overtime compensation, and an additional equal amount as liquidated damages for violations of §§206 and 207 of the Act.

Complaint under the Fair Labor Standards Act

29. This action is brought pursuant to 29 U.S.C.S §216(b), as amended in 1977, providing for a private cause of action under the Act's anti-retaliation provision, 29 U.S.C.S. §215(a)(3) of the Act.

30. This action is brought pursuant to the Fair Labor Standards Act, 29 U.S.C.S. §215(a)(3) which provides an employer may not discharge or in any other manner or discriminate against an employee because that employee has filed a complaint against the employer regarding or otherwise opposed violations of the Act.

31. Plaintiffs seek all legal relief and equitable relief as may be appropriate to effectuate the purposes of the Act's anti-retaliation provision. 29 U.S.C.S. §215(a)(3), including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages.

32. Plaintiffs seek full compensation for mental anguish and emotional distress caused by Defendant plus an equal amount as liquidated damages.

33. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.S. §1331.

34. Venue is proper in the Southern District of Alabama pursuant to 28 U.S.C.S. § 1391(b).

35. Defendant is subject to personal jurisdiction in the State of Alabama for the purpose of this lawsuit.

36. Plaintiffs have consented in writing to be a party to this FLSA action pursuant to 29 U.S.C.S. §216(b). [**Exhibit A** – Begley's signed consent; **Exhibit B** – Lee's signed consent].

**II.    Facts**

Complaint under the Fair Labor Standards Act

37. Defendant Loda bier Garten Inc. operates a restaurant located at 251 Dauphin Street, Mobile, Alabama 36602.

38. Defendant Loda offers a wide selection of draft beer and pub fare to patrons.

39. Defendant Loda employs individuals to work as servers.

40. Defendant's servers provide friendly, attentive service, including taking and delivering food and beverage orders.

41. Defendants require servers, including Plaintiffs, to buy t-shirts including the Loda bier Garten brand logo ("Loda branded shirts").

42. Plaintiff Begley purchased at least five (5) Loda branded shirts.

43. Plaintiff Lee purchased at least three (3) Loda branded shirts.

44. Defendants do not reimburse servers, including Plaintiffs, for the out-of-pocket expense of purchasing the Loda branded shirts. Men's shirts were between twenty and twenty-five dollars each, and women's shirts were between eleven and fifteen dollars each.

45. Defendants requires that the Loda branded shirts worn by servers, including Plaintiffs, to be clean at the beginning of each shift before serving the public.

46. Defendants do not provide a laundering service to clean servers', including those belong to Plaintiffs, shirts before their next shift.

47. Defendants do not compensate servers, including Plaintiffs, for the time spent washing and maintaining the Loda branded shirts in sanitary condition.

48. Plaintiffs washed their Loda branded shirts before they wearing them on another shift.

49. Defendants opens its doors to customers at 11:00 AM Sunday through Saturday.

50. Defendants require servers, including Plaintiffs, to arrive at 10:00AM Sunday through Saturday, approximately one hour before Defendants opens the doors to customers.

51. Frequently, when Defendants open the doors to the restaurant at 11:00AM there are not enough customers for each server to start serving.

52. Between the time servers arrive, including Plaintiffs, and the time they start serving their first customer is pre-customer non-tip producing time ("pre-customer time").

53. Defendants claim a tip credit for servers', including Plaintiffs', pre-customer time.

54. Servers, including Plaintiffs, spent their pre-customer time performing various non-tip producing duties, including but not limited to:

    a.  making tea;

    b.  setting up the soda fountains;

    c.  retrieving and transporting ice;

    d.  cleaning tables and chairs with bleach mixture;

    e.  pulling down bar chairs;

    f.  setting up condiment caddies, napkin holders, on the bar and tables;

    g.  transporting trash cans on the perimeter of the inside and outside dining areas;

    h.  stocking, and transporting server station carts;

    i.  retrieving, transporting, and placing large floor mats at the entrances;

    j.  setting outside tables, including umbrellas;

    k.  cleaning doors and windows;

    l.  placing signage out front;

    m.  wiping down tray liners and cleaning food trays;

55. Generally, the opening duties were scheduled to be started by 2-3 designated servers, but all were responsible, and the non-designated servers were expected to continue and complete these duties after the doors opened.

Complaint under the Fair Labor Standards Act

56. Defendants do not track the amount of servers', including Plaintiffs', pre-customer time on a daily or weekly basis.

57. Between shifts, departing and arriving servers were expected to check and replace any items that would be needed for continued service, including but not limited to tea, to go item boxes, cups, condiments, napkins as well as cleaning dining area, transporting and racking plates in the dish pit, cleaning dishes, filling the ice machine, rolling silverware, and food trays.

58. Defendants generally stops seating and serving customers at 12:30AM Sunday through Thursday and 2:00AM Friday through Saturday.

59. Servers, including Plaintiffs, frequently serve their last customer before 12:30AM Sunday through Thursday and 2:00AM Friday through Saturday.

60. Defendants require servers, including Plaintiffs, working just a lunch shift to remain between thirty and forty-five minutes after they finished serving their last customer before they were allowed to leave the restaurant.

61. Defendants require servers, including Plaintiffs, working a dinner shift to remain between one hour up to two hours after they finished serving their last customer before they were allowed to leave the restaurant.

62. Before servers, including Plaintiffs, were permitted to leave the restaurant they were required to complete closing duties, including janitorial, dishwashing, and non-server like tasks.

63. Servers closing duties at night included but are not limited to the following:

    a.  Filling napkin holder;

    b.  Cleaning condiment caddies and their contents;

    c.  Cleaning outside area;

    d.  Transporting, stowing outside serving carts;

    e.  Transporting bus tubs to dish pit, scraping dishes, washing dishes, loading dishracks;

    f.  Restock to-go boxes, stock table and rolling napkins;

    g.  Dump and clean tea urns, and the clean the tea stations;

    h.  Retrieve, transport, and clean coffee pots;

    i.  Sweeping the floors, wiping down tables and chairs;

    j.  Restocking the bathrooms, including toilet paper, paper towels, and female sanitary items;

    k.  emptying bathroom trash cans, including the female sanitary cans, and transporting the trash;

    l.  flip benches, flip bar chairs, take down umbrellas;

    m.  polish and roll silverware; and

    n.  other miscellaneous duties that were assigned.

64. After servers had completed their closing duties they had to go through a checkout process with Defendants management.

65. Defendants management would check that servers had adequately completed their closing duties, review their sales reports, and calculate the tip-out owed before they allowed servers to leave.

66. The time between servers stop serving their last customer and the time they leave the restaurant is post-customer non-tip producing time.

67. Defendants claim a tip credit for servers', including Plaintiffs', post-customer time.

Complaint under the Fair Labor Standards Act

68. Defendants do not track the amount of servers', including Plaintiffs', pre-customer time on a daily or weekly basis.

69. Defendants time keeping and payroll system does not automatically change servers, including Plaintiffs, pay rate when their time pre-customer and post-customer serving non-tip producing time exceeds twenty percent (20%) of their worktime.

70. Defendants had a practice of charging servers, including Plaintiffs, for walk outs and food order errors.

71. Servers were required to study, take, and pass a beer serving certification exam.

72. Servers, including Plaintiffs, paid between approximately $70.00 to $80.00 to take the certification exam, and $10.00 for study guide.

73. Defendants required servers, including Plaintiffs, to take the exam on site.

74. Servers were told by Defendants managerial employees that if a server failed the beer serving exam the server would be removed from the schedule.

75. Servers, including Plaintiffs, were required to attend meetings, including beer classes that could last up to an hour.

76. Not all compensable time was recorded and used in determining the pay owed to servers, including Plaintiffs, on a week-by-week basis, resulting in non-payment of wages owed.

77. Defendants required servers to learn the menu and take a menu test.

78. Plaintiff Begley provided training to new employees, when the doors were closed to the public and was only paid $2.13 per hour.

79. Defendant employed individuals to work solely as dishwashers.

Complaint under the Fair Labor Standards Act

80. Defendant paid those individuals employed solely as dishwashers a direct hourly wage of at least $7.25 per hour.

81. Defendant stopped employing individuals to solely work as dishwashers.

82. By terminating the dishwashers servers, including Plaintiffs, were made responsible to wash all of their dishes before they were allowed to leave the restaurant.

83. Servers, including Plaintiffs, were required to fill up the sink, use soap, and manually wash all dishes, glasses, silverware, and load it into the dishwashing machine at the end of their shift

84. Defendant did not pay servers, including Plaintiffs, a direct hourly wage of at least $7.25 per hour for the time spent washing dishes.

85. Defendant Loda claimed a tip credit for Plaintiff Begley and Plaintiff Lee for time they spent washing dishes.

86. Plaintiff Lee approached Matt Golden, owner of Defendant Loda, and asked if it was management's decision to no longer have a dishwasher.

87.  In response Defendant Golden asked, "What are you doing now?"

88. Plaintiff Lee stated, "I'm running the water for the dishes. I don't think the servers can maintain dish work and other duties and still give the customer 100% attention during the lunch rush, especially if we run out of dishes."

89. Plaintiff Lee opposed Defendant claiming a tip credit for time spent washing dishes on top of their non-tip producing closing duties.

90. Plaintiff Lee was terminated that day.

91. Plaintiff Begley opposed Defendant claiming a tip credit for time spent washing dishes.

Complaint under the Fair Labor Standards Act

92. Begley approached her direct supervisor manager Kaelan McArthur about the amount of nontipped work being done in the presence of two other employees.

93. Begley opposed Defendant claiming a tip credit and inquired about the legality of Defendant's pay practice.

94. Specifically, Plaintiff Begley stated, "I don't think this legal under the 80/20 rule."

95. Four days after Begley opposed Defendant's practice of claiming a tip credit and inquired about its legality she was terminated by Kaelan McArthur.

96. Defendant Matt Golden made the decision to terminate Begley.

97. Defendants' putative business reason for terminating Plaintiff Begley was false.

98. Begley never received any disciplines prior to her opposing Defendant's pay practices and the decision to terminate her employment.

99. Begley never refused to wash dishes as claimed by Defendant Matt Golden during her unemployment hearing.

100. Defendant Matthew Golden stated that the decision to eliminate the dishwashing was in part to a slow down of business.

101. Matthew Golden is opening a second restaurant location.

102. Defendant Matthew Golden, Defendant EPS, and Defendant ELM opposed Plaintiff Begley's efforts to collect unemployment benefits.

103. After a hearing was held with unemployment Plaintiff was determined to be entitled to her unemployment benefits.

104. Defendants' putative business reason for terminating Plaintiff Begley was merely pretext intended to hide illegal retaliatory animus.

Complaint under the Fair Labor Standards Act

105. Defendants' terminated Plaintiff Begley shortly after opposing Defendant claiming a tip credit for time spent washing dishes.

106. Plaintiff Lee opposed Defendant claiming a tip credit for time spent washing dishes.

107. Defendants' terminated Plaintiff Lee shortly after opposing Defendant claiming a tip credit for time spent washing dishes

108. Defendants' putative business reason for terminating Plaintiff Lee was false.

109. Defendants' putative business reason for terminating Plaintiff Lee was merely pretext intended to hide illegal retaliatory animus.

110. Defendants violation of the Act's minimum wage, overtime, tip credit provisions and the prohibitions against kick-backs and passing on of business expenses were intentional and willful.

### III.   Causes of Action

### Lee's and Begley's Wage Claims

111. Defendants did not pay Plaintiffs a direct cash wage of $7.25 per hour.

112. Defendants claimed a tip credit for their wage obligations to Plaintiff.

113. Defendants required Plaintiffs to participate in tip-sharing arrangement.

114. Plaintiffs purchased Loda branded shirts from Defendants.

115. Defendants did not reimburse Plaintiffs for the costs of the shirts.

116. Defendants did not record or pay Plaintiffs for time spent washing Loda branded shirts.

117. Defendants did not track the amount of Plaintiffs in pre- and post-customer serving times.

13

118.     Defendants did not pay Plaintiffs a direct hourly wage of $7.25 per hour for time spent being trained.

119.     Defendants did not pay Plaintiff Begley a direct hourly wage of $7.25 per hour for time spent training other employees.

120.     Defendants did not pay Plaintiffs a direct hourly wage of $7.25 per hour for time spent taking the beer serving certification exam.

121.     Defendants did not pay Plaintiffs' beer serving certification exam fees.

122.     Defendants did not pay Plaintiffs' beer serving certification study book costs.

123.     Defendants did not pay Plaintiffs a direct hourly wage of $7.25 per hour for time spent attending meetings, including beer trainings.

124.      Defendants claimed a tip credit for all hours worked by Plaintiffs.

125.     Defendant claimed a tip credit for all hours worked by Plaintiffs even when their pre- and post- customer serving non-tip producing job duties exceeded twenty percent (20%) of their worktime.

126.     Defendants failure to pay Plaintiffs a direct cash wage of at least $7.25 per hour for time spent over twenty percent of their worktime performing non-tip generating work duties qualifies as a violation of the FLSA's twenty percent rule.

127.     Defendants failure to pay Plaintiffs a direct cash wage of at least $7.25 per hour for time spent performing janitorial, dishwashing, and other non-server work is a violation of the dual job rule.

128.     Defendants charging Plaintiffs for uniforms violated the FLSA's anti-kick back provisions.

129.    Defendants failure to pay or reimburse Plaintiffs for expenses related to exams, study guides, laundering expenses violated the FLSA's anti-kick back provisions.

130.    Defendants failed to record and pay the time spent by servers studying and maintaining their uniform shirts though those activities are compensable.

131.    Defendants timekeeping and payroll policies, procedures, and practices resulted in an unlawful tip credit.

132.    Defendants must relinquish the unlawful tip credit.

133.    Defendants timekeeping and payroll policies, procedures, and practices resulted in a violation of their minimum wage obligations.

134.    Defendants timekeeping and payroll policies, procedures, and practices resulted in a violation of their overtime compensation obligations.

135.    Defendants are liable for unpaid wages plus an additional amount in liquidated damages.

136.    Defendants are liable for reasonable attorneys' fees and costs.

**Lee's and Begley's Retaliation Claims**

137.    Plaintiffs engaged in protected activity when they challenged the legality of Defendant requiring servers to wash dishes while still claiming a tip credit.

138.    Plaintiffs had a good-faith belief that Defendant claiming a tip credit was an unlawful employment practice when they voiced their opposition to their practice.

139.    Defendants were aware of each Plaintiffs articulated opposition to Defendant claiming a tip credit for time spent washing dishes before deciding to terminate their employment.

140.     The temporal proximity between Plaintiffs' engaging in protected activity and Defendants decision to terminated Plaintiffs is sufficiently close for a reasonable trier of fact to infer retaliatory animus.

141.     Defendants claimed business justification for terminating Plaintiffs is pretext.

142.     Defendants articulated business justification is unworthy of credence in light of contradictions, inconsistencies, and infirmities.

143.     There is a causal connection between Plaintiffs' protected activity and Defendants decision to terminate their employment.

144.     Defendant Golden decided, approved, ratified and condoned the retaliatory termination of Plaintiffs.

145.     Defendant Golden's involvement in the day-to-day operation of the restaurant and control over the restaurant qualifies him as an employer under the Act for the purposes of being held liable.

146.     Defendants violation of the FLSA was knowing, intentional, and willful with respect to their conduct that violates the minimum wage, overtime compensation, tip credit, and anti-retaliation provisions of the FLSA.

## IV.   Prayer for Relief

WHEREFORE, premises considered Begley pursuant to 29 U.S.C. § 216(b), pray for the following relief:

1.   An award of backpay, including lost minimum wage, overtime compensation, tip money, and other compensatory benefits plus an equal amount in liquidated damages between discharge and the date of trial;

2. An award of front pay for lost compensation, including minimum wage, overtime compensation, and other compensatory benefits plus an equal amount of liquidated damages in lieu of reinstatement if reinstatement is not possible due to extenuating circumstances and it is necessary to provide relief to Plaintiffs for a period sufficient to effectuate the purpose of the FLSA given the egregious and brazen circumstances;

3. An award for non-economic damages related to pain and anguish resulting from their unlawful discharge from employment;

4. An award of liquidated damages for the award of non-economic damages related to pain and anguish resulting from Loda bier Garten's unlawful discharge, failure or refusal to employ or re-employ;

5. An award of reasonable attorneys' fee to be paid by Loda bier Garten, and costs of the action;

6. Enter final judgment against Defendants for violations of the FLSA's prohibition against retaliation;

7. An award of an amount equal to any increased tax liability incurred by Plaintiffs as a result of any lump sum payment of monetary award, including, but not limited to backpay, front pay, award of reasonable attorneys' fees and costs, and any other monetary amount awarded;

8. Enter an order requiring Defendants to provide eight (8) hours of training to all its management, owners, human resource, corporate employees on the prohibition of FLSA retaliation;

9. Enter an order requiring Defendants post copies of the FLSA's anti-retaliation provision in a conspicuous place or places for sixty (60) consecutive days, and

Complaint under the Fair Labor Standards Act

requiring Defendants take steps to ensure that the notices are not altered, defaced, or covered.

10. Enter an order indicating Plaintiffs' were the prevailing parties;

Respectfully Submitted 11th Day of February 2019

/s/.      Daniel E. Arciniegas      .

Daniel Arciniegas
Daniel@attorneydaniel.com
Arciniegas Law, PLLC.
501 Union Street, Suite 430
Nashville, TN, 37219
t. 629-777-5339
f. 615-988-9113

*Counsel for Plaintiff*_____

## **Certificate of Service**

I hereby certify that on Monday, February 11, 2019, that a true and correct copy of the above foregoing document, **Complaint Under the Fair Labor Standards Act**, has been properly served via the Court's CM/ECF system, which sent electronic notice to the following counsel of record.

## **DEFENDANTS WILL BE SERVED VIA CERTIFIED UNITED STATES MAIL**

Loda bier Garten
C/o Matthew Golden
251 Dauphin Street
Mobile, AL, 36602

Employee Liability Management, Inc.
C/o Joseph D. Collins
3729 Cottage Hill Rd.
Mobile, AL, 36609

Executive Park Services, LLC
C/o Joseph D. Collins
3123 Executive Park Circle
Mobile, AL, 36606

Poinciana Holdings LLC
C/o Mitch Damsky
3600 Clairmont Ave
Birmingham, AL, 35222